Argued and submitted October 6, 2006, reversed and remanded for a new trial
April 11, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CRYSTAL MARIE SHELLY,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0000746; A127028

157 P3d 234

Laurie Bender argued the cause and filed the brief for appellant.

Jennifer S. Lloyd, Attorney-In-Charge, Collateral Remedies and Capital Appeals, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Hargreaves, Senior Judge.

SCHUMAN, J.

Hargreaves, S. J., dissenting.

**SCHUMAN, J.**

Defendant appeals from a judgment of conviction for robbery in the first degree, ORS 164.415, and burglary in the first degree, ORS 164.225. She assigns error to the trial court's refusal to permit cross-examination of a witness for the purpose of establishing that the witness had an interest in currying favor with the prosecution and that, therefore, his testimony might lack credibility. In particular, defendant wanted to cross-examine the witness about his status at the time of trial as a probationer exposed to revocation. We agree with defendant that the court erred in not permitting that cross-examination. Accordingly, we reverse and remand for a new trial.[1]

Because the jury found defendant guilty, we state the facts in the light most favorable to the state, *State v. Langley*, 314 Or 247, 249, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993), but we are cognizant of the fact that the truth of the testimony on which the jury's finding rests is the subject of this appeal.

Defendant was acquainted with a man named Hahn and knew that he kept valuable baseball cards in his apartment. She discussed that fact with her friend (and ultimate codefendant) Werner. About a month later, defendant, Werner, and another individual, Thurber, went to Hahn's apartment. Hahn was not home, but his roommate, Lustri, was. Upon being admitted, Thurber threw Lustri to the ground, put a machete to the back of his neck, and demanded to know where Hahn kept the baseball cards. Lustri replied that he did not know where most of them were, but he revealed where one was, as well as some other valuable property. Defendant and Werner then took the card, some compact discs, a VCR, and a portable stereo from the apartment. According to Lustri, defendant also kicked him and threatened to use the machete on him. Defendant, Werner, and Thurber then left. Approximately an hour later, police found the three at the apartment of another friend, where they

---

[1] Defendant raises additional assignments of error that we reject without discussion.

recovered the stolen property and arrested the three suspects.

Defendant was charged with first-degree burglary and first-degree robbery. At trial, defendant wanted to question Lustri about a criminal investigation that the police conducted regarding an event that occurred after the charged events in this case. Defendant explained to the court that evidence of the investigation, which had not led to the filing of charges, could be relevant to establish that Lustri had an interest in telling police what they wanted to hear with regard to defendant—in other words, that Lustri had lied to the police so that they would be inclined not to charge him with the subsequent crime. The trial court refused to allow the questioning on the ground that its potential to create prejudice outweighed its probative value. For the same reason, the court also refused to allow defendant to question Lustri about whether he was currently on probation and had recently violated its terms. Again, defendant's intention, as explained to the trial court, was to demonstrate that Lustri had an interest in giving the police information, regardless of its truth, if it would allow them to prove the charges against defendant.

We conclude that the trial court erred in prohibiting defendant from cross-examining Lustri in order to show that his testimony lacked credibility because it might have been influenced by his desire to please the prosecutors. The evidence was relevant, even though it did not deal directly with the charged events.

> " 'Matters which would otherwise be irrelevant may be offered to show the bias or interest of a witness.' *State v. Dowell*, [274 Or 547, 550, 547 P2d 619 (1976)]; *O'Harra v. Pundt*, 210 Or 533, 543, 310 P2d 1110 (1957). To be relevant, evidence introduced to impeach a witness for bias or interest need only have a mere tendency to show the bias or interest of the witness. * * * Evidence of bias or interest relates to the credibility of the witness. It need not be relevant to another matter of consequence to the determination of the case."

*State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984). Evidence that a person is on probation and at risk of having that

probation revoked is generally relevant to that person's credibility when he or she testifies for the prosecution in a criminal case, except, perhaps, in extraordinary circumstances not present here (for example, if the term of probation was due to expire very shortly after the trial). In *State v. Weinstein*, 108 Or App 486, 487, 814 P2d 565 (1991), we agreed with the state's concession that the trial court erred in not allowing the defendant to impeach the state's witness by eliciting on cross-examination evidence that the witness was on probation; the evidence showed bias, because the witness had a motive to lie to avoid having his probation revoked. *See also Davis v. Alaska*, 415 US 308, 318, 94 S Ct 1105, 39 L Ed 2d 347 (1974) (constitutional error "of the first magnitude" to prohibit the defendant from impeaching state's witness by showing that he was on probation and that his cooperation was motivated by fear of revocation (internal quotation marks omitted)).

■ Relevant evidence, of course, is not automatically admissible. Ordinarily, under OEC 403, the court has discretion to reject evidence if its probative value is substantially outweighed by the danger of unfair prejudice. However, "[t]he authority [under OEC 403] to limit impeachment evidence does not stand for the proposition that trial judge discretion justifies exclusion of an initial showing, by relevant evidence, of sufficient facts from which the bias or interest of a witness may be inferred." *Hubbard*, 297 Or at 799. In other words, the court's discretion to limit impeachment evidence that goes to interest or bias applies only to evidence that amplifies, develops, or elaborates an "initial showing." Here, the court invoked OEC 403 to prohibit the entire line of questioning. That was error.[2]

■ The court in some circumstances may also limit the scope of cross-examination under OEC 611(2).[3] This case

---

[2] We hold only that the court erred in not allowing evidence that Lustri was on probation. Admitting evidence of the facts underlying his probationary status would raise issues under OEC 608 and OEC 609, which we need not confront.

[3] OEC 611(2) provides:

"Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

does not present such circumstances. "The discretion of the trial judge to control the scope of cross-examination pursuant to OEC 611(2) does not allow the exclusion of evidence offered to impeach a witness for bias or interest." *Id.* at 799.

■　　Finally, we must determine whether the trial court's error in prohibiting the evidence of bias or interest was harmless. As the Supreme Court observed in *Hubbard,*

> "It is error for the trial judge to exclude evidence which establishes sufficient facts from which the bias or interest of a witness may be inferred. If in the context of the entire trial, the exclusion is prejudicial to the party who sought to introduce the impeachment evidence, it is reversible error. The United States Supreme Court has provided a thoughtful statement on this prejudice in a case involving cross-examination which attempted to show the bias or interest of a witness. It stated:
>
> > " 'It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury can't fairly appraise them.' *Alford v. United States,* 282 US 687, 692, 51 S Ct 218, 219, 75 L Ed 624, 628 (1931).
>
> "We subscribe to the quoted statement from *Alford* and hold that a decision to exclude evidence relevant to bias or interest which is error, is reversible if it denies the jury an adequate opportunity to assess the credibility of a witness whose credibility is important to the outcome of the trial."

297 Or at 800.

In this case, Lustri was the sole nondefendant witness to the crime. The only other testimony regarding the details of the incident came from Werner, whose testimony minimized his and defendant's role. Although Werner testified that defendant was present at the robbery, he also testified that defendant may not have been aware that Thurber intended to rob Lustri before going into the house; that instead of threatening to hurt Lustri, defendant told Thurber *not* to hurt him; and that defendant's only involvement in the

crime was to carry out a VCR. Werner also testified that he had participated in the robbery only because he was afraid that Thurber would hurt him, defendant, and Lustri if he did not participate. The jury, then, could easily have inferred from Werner's testimony that defendant never intended to rob Lustri and that she had carried out the VCR under duress. Lustri's credibility was important to the outcome of the trial and the trial court's refusal to allow defense counsel to impeach Lustri's credibility for bias or interest was not harmless.

Reversed and remanded for new trial.

**HARGREAVES, S. J.,** dissenting.

Today the majority holds that, "[e]vidence that a person is on probation and at risk of having that probation revoked is generally relevant to that person's credibility when he or she testifies for the prosecution in a criminal case, except, perhaps, in extraordinary circumstances," 212 Or App at 68-69, and reverses the ruling of the trial court for failing to allow such evidence. Unfortunately, the majority either misapplies this rule to the facts of this case or intends the phrase "at risk of having that probation revoked" to have such a broad meaning that the mere status of being on probation will always be a basis of a showing of bias, "except, perhaps, in extraordinary circumstances." *Id.* at 69. Either way, I disagree with the majority and therefore dissent.

## MISAPPLICATION OF THE RULE TO THE FACTS

While the majority accurately frames the issue presented, it does so in such a way as to leave an erroneous impression as to the facts underlying the issue in this case. While the record reflects that Lustri was on probation and had apparently had several recent violations, the record also reflects that he had already been sanctioned for those violations. There is no evidence in the record to show that at the time of trial Lustri had any outstanding accusations of violations of his probation. Thus, there is nothing in this record to show that he was "at risk of having that probation revoked." Therefore, the evidentiary rule as set out by the majority simply does not apply to the facts of this case and cannot form the basis for reversing the trial court.

## EXPANSIVE MEANING

If the majority means by its holding that anyone who is on probation is "at risk of having that probation revoked" at any time simply by virtue of the fact of being on probation, the majority establishes the rule that the mere status of being on probation is always a basis for showing the bias or interest of a witness, "except, perhaps, in extraordinary circumstances." I believe that such a meaning would be a major change in the law in the State of Oregon that is neither logically sound nor supported by case law.

In support of its decision, the majority cites two cases, *Davis v. Alaska*, 415 US 308, 94 S Ct 1105, 39 L Ed 2d 347 (1974), and *State v. Weinstein*, 108 Or App 486, 814 P2d 565 (1991). These cases neither compel nor support the broad rule adopted by the majority.

In *Davis*, there was a burglary and a safe was stolen. 415 US at 309. The empty safe was later discovered abandoned near the property where Green, a juvenile, lived. *Id.* Green was on juvenile probation at the time for having committed two burglaries. *Id.* at 311. Green told the police that, on the day after the burglary, he had seen and spoken with two men on the road near where the safe was found. *Id.* at 310. He also indicated that one of the men had what appeared to be a crowbar in his hand. *Id.* Green was able to pick the defendant out of a photo throw-down, who was later arrested and charged with the burglary. *Id.*

At trial, the defendant wanted to show that Green was on probation for burglary and thus had a strong motive to lie to shift any suspicion away from himself, given that the safe in question was found abandoned near his home. *Id.* at 311. The trial court refused to allow the introduction of this evidence. *Id.*

On appeal, the Supreme Court took great pains to set forth much of the cross-examination of Green, and then observed regarding the impact of the trial court's ruling restricting questioning of Green regarding his probation:

> "The witness was in effect asserting, under protection of the trial court's ruling, a right to give a questionably truthful answer to a cross-examiner pursuing a relevant line of

inquiry; it is doubtful whether the bold 'No' answer would have been given by Green absent a belief that he was shielded from traditional cross-examination. It would be difficult to conceive of a situation more clearly illustrating the need for cross-examination."

*Davis*, 415 US at 314.

The Court went on to say:

"*On these facts* it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross-examination which ' "would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Brookhart v. Janis*, 384 US 1, 3 [16 L Ed 2d 314, 86 S Ct 1245].' *Smith v. Illinois*, 390 US 129, 131, 19 L Ed 2d 956, 88 S Ct 748 (1968)."

*Id.* at 318 (emphasis added). It is also interesting to note that, in his concurring opinion, Justice Stewart carefully points out the limited nature of the holding in the case. He says:

"The Court holds that, *in the circumstances of this case,* the Sixth and Fourteenth Amendments conferred the right to cross-examine a particular prosecution witness about his delinquency adjudication for burglary and his status as a probationer. Such cross-examination was necessary in this case in order 'to show the existence of possible bias and prejudice * * *.' In joining the Court's opinion, *I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions.*"

*Id.* at 321 (Stewart, J., concurring) (citation omitted; ellipsis in original; emphasis added).

Two things seem clear about the *Davis* case. First, it is a very fact-specific holding and does not announce a general rule regarding the use of probationary status to impeach for bias or interest. Second, the issue of Green's probation was directly linked to the facts of the case in that the stolen safe was found near where Green lived and, given that he

was on probation for earlier burglaries, he had a very strong and immediate interest in seeing to it that suspicion was directed away from him as a suspect.

The second case relied on by the majority is *Weinstein*. What follows is the entire *Weinstein* opinion:

> "Defendant appeals his convictions for assault, harassment and criminal mischief. ORS 163.160; ORS 166.065; ORS 164.354. The victim, Mullinix, testified that defendant, an acquaintance, came to his house and attacked him. Defendant sought to impeach him by eliciting on cross-examination evidence that Mullinix was on probation. Defendant argued that the evidence showed bias, because Mullinix had a motive to lie about the fight to avoid having his probation revoked. The state concedes that it was prejudicial error to exclude the evidence. We accept that concession.

> "Reversed and remanded for a new trial."

108 Or App at 487.

Just as in *Davis*, Mullinix's probationary status was directly linked to the facts of the case, and he had a strong and immediate interest in seeing to it that blame for the altercation was clearly placed on the defendant.

In my view, *Davis* and *Weinstein* are polar opposites of the case before this court. Here, Lustri's probation has no connection whatsoever to the facts of the case. He has no need to protect himself through slanting his testimony. Under these circumstances, the only rationale upon which his probationary status can be deemed to be relevant is to hold, as the majority does today, that the mere fact of probation is enough to allow the witness to be impeached for bias or interest.

Such a rule will lead to some interesting results. Imagine the innocent bystander on a street corner in downtown Portland who witnesses an armed robbery. Doing his duty as a good citizen, the bystander shows up at trial to testify. If our bystander has 10 misdemeanor convictions but none is of the nature that can be used for impeachment, then his credibility cannot be assailed. However, if one of those misdemeanors is a conviction for unlawful possession of

undeployed air bags or air bag canisters,[1] out of the Justice Court in Sherman County where he was placed on probation, then our bystander's credibility can be attacked; not for the heinous crime he has committed, but by the mere fact that the judge thought him to be a good candidate for probation. By virtue of the majority opinion, this person has a motive to lie.

I believe that the more rational approach in this case is to view *Davis* and *Weinstein* as representing one end of a continuum where a witness's status as a probationer is always going to be admissible for impeachment for bias and interest and this case as the other end of the continuum demonstrating when a witness's status as a probationer is never going to be admissible for impeachment for bias and interest. Between these extremes, it will be up to the trial courts to sort out, on a case-by-case basis, where the facts in each case before them fall on the continuum and then admit or reject evidence of probation based on their findings.

For the reasons set forth above, I would affirm the trial court.

---

[1] ORS 167.824 provides:

"(1) A person may not possess more than two undeployed air bags or air bag canisters containing sodium azide that have been removed from a vehicle. This subsection does not apply to motor vehicle dealers, automobile repair facilities or dismantlers certified under ORS 822.110.

"(2) A violation of subsection (1) of this section is a Class C misdemeanor."