Argued and submitted October 30, 2008, reversed and remanded June 24, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## SHELAN PRINCE MULDREW,
aka Shelan Prince Mudrew,
aka Shelan P. Muldrew,
*Defendant-Appellant.*

Multnomah County Circuit Court
060647627; A135556

210 P3d 936

Ryan T. O'Connor, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Pamela Johnstone Walsh, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Carson, Senior Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals a judgment of conviction for interfering with a police officer, ORS 162.247(1), and offensive physical contact prohibited, Portland City Code (PCC) 14A.40.040. He makes two assignments of error on appeal. First, he contends that Count 1 of the information, which charged him with interfering with a police officer, is deficient because it fails to allege that the crime occurred within the territorial jurisdiction of the court. We reject that assignment without discussion. He also assigns error to a trial court ruling that precluded him from cross-examining the arresting police officer for the purpose of establishing that the officer had a personal interest in ensuring petitioner's conviction, because a conviction could insulate the officer from civil liability or discipline on account of injuries that defendant sustained during his arrest. In particular, defendant sought to ask the arresting officer whether his police report included the statement, "I recommend that the DA's office charge [defendant] with Resist[ing] Arrest, based on the injuries he received." We agree with defendant that the court erred in sustaining the state's objection to that inquiry. Accordingly, we reverse and remand.

"Because the jury found defendant guilty, we state the facts in the light most favorable to the state." *State v. Langley*, 314 Or 247, 249, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993). Defendant and some friends, including a 16-year-old girl, Bulloch, drank alcohol while in downtown Portland during the Rose Festival. Bulloch became ill and vomited while riding a TriMet MAX train. Someone called the police, and some officers met the train at a stop near the Skidmore fountain. Defendant and several friends got off the train with Bulloch. Portland Police Officer Brown and other officers attended to Bulloch, who was unable to stand on her own. Defendant, who was intoxicated, asked the officers to get water for Bulloch to drink, and, when the officers did not do that, defendant yelled at them. Defendant grabbed Bulloch by the arm and tried to pick her up and force her to walk. Brown pushed defendant away from Bulloch and asked defendant "at least a couple of times" to leave.

Firefighters and medical personnel arrived to help Bulloch. Twice, the firefighters told defendant to "step back," and one firefighter pushed defendant back, because he was interfering with their efforts to help Bulloch. Brown ordered defendant to move away from the medical personnel so that they could treat Bulloch. Defendant became angry, raised his left arm level with his chest, closed his left hand into a loose fist, and stepped toward Brown. Brown noticed that defendant's jaw was "tense" and that he could see the veins in defendant's neck. At that point, Brown believed that defendant might hit or grab him and wanted to stop defendant before he did that.

Brown grabbed defendant and placed him in an armbar hold while another officer grabbed defendant's other arm. Defendant swung around, the other officer lost control of defendant's arm, and Brown took defendant to the ground. Defendant scraped and cut his head during the struggle. He was arrested and taken to a police station; he later received stitches at a hospital to close the head wound.

Defendant was charged with interfering with a police officer and offensive physical contact prohibited. Defendant sought to introduce evidence under OEC 609-1 at trial to impeach Brown for bias or interest. Defendant's theory was that, because Brown could be civilly liable or subject to internal police discipline for the injuries that defendant had sustained and a conviction might help insulate Brown from either of those consequences, Brown had a motive to exaggerate his testimony about defendant's conduct. The evidence that defendant sought to introduce consisted of (1) photographs of and testimony about defendant's injuries, (2) information about Brown's civil liability training as a police officer, and (3) Brown's statement in his police report recommending that defendant be charged with resisting arrest.

In a pretrial motion *in limine,* defendant sought to introduce photographs of his injuries. Defense counsel explained:

"They should be introduced, * * * because it goes to bias of the police officer, Officer Brown * * *. He caused the gash to [defendant's] forehead, which required eight stitches. *In*

*fact, the last line of [Officer Brown's] police report is, 'I recommend that the DA's office charge [defendant] with Resist[ing] Arrest, based on the injuries he received.'*

"[Defendant's] injuries are relevant to whether Officer Brown exaggerates his testimony because of his concerns of civil liability. A conviction would essentially eliminate the chance [o]f civil liability. So, the fact that he was injured is relevant to the officer's credibility, testifying in court today, trying to secure a [conviction] which would eliminate [defendant's] civil recourse * * *."

(Emphasis added.) The trial court ruled that the photographs were admissible.

Later, during trial, defense counsel began to ask Brown about his police report, stating, "Now, the—your police report contains, in the last page, the sentence—." The state objected and a discussion was held off the record. Defense counsel resumed his cross-examination by asking about defendant's injuries, about the photographs of defendant's injuries, and about Brown's civil liability training as a police officer. Defense counsel then asked Brown, "[Defendant's] injuries caused you concern that this might be a case where there might be civil liability, correct?" Brown replied, "No, sir." Immediately after that statement, the attorneys had a conversation with the court in chambers, and then cross-examination resumed.

A short time later, the court noted that several objections had been discussed off the record and asked defense counsel whether he wanted to put anything on the record about them. The following colloquy ensued:

"[DEFENSE COUNSEL:] I believe that the [OEC] 403 objection * * * I think the grounds that you have excluded the evidence of the police officer's statement in his police report, that he recommended to the DA's office that they charge [defendant] with Resist[ing] Arrest, based on the injuries that [defendant] received, that—that's relevant to bias, for one, because he's * * * putting forward his concern that these injuries may result—should result in—in [civil] liability.

"He did * * * acknowledge * * * the statement that I read * * * from the training manual that the typical situation in which police find themselves civilly liable [is] when there is a use of force, and no conviction for Resist[ing] Arrest.

"* * * He acknowledged that that's part of his training, that that sounds right to him, and then he puts in his report that he recommends charging [defendant] with Resist[ing] Arrest because of the injuries he received. That comes in. And there's no * * * [OEC] 403 grounds to keep it out, from the State's [sic] perspective.

"So that's—that's the position.

"[PROSECUTOR:] Your honor, I just want the record to be clear that what we're talking about are characterizations by the defense of this language that's in his report. There's no evidence by Officer Brown that he was concerned of civil liability. That's not an issue. There hasn't been an offer of proof on that. It's just all characterizations made by Defense Counsel.

"[COURT:] I can see your point, but I am finding the statement that you're specifically wanting to inquire of the officer in his line in the police report encouraging the District Attorney to pursue charges of Resisting Arrest, and * * * I just don't see how that is relevant. There is no other evidence in the record of bias. * * * It doesn't impeach evidence that's in the record.

"So I am excluding—It's not charged, and * * * it brings up legal issues that are * * * not * * * the witness['s]. It's not his job to determine what the charges are, and so to present that to a jury * * * makes the prejudice outweigh the relevance, because then they would be more likely to conclude that there is something legally amiss here, because that charge did not come up.

"I also think, frankly, it's prejudic[ial] to [defendant] * * * to allege that he should be charged with Resisting Arrest, that * * * it sort of casts aspersions on his behavior more serious than what he's actually charged with.

"So I will not be, as indicated, allowing inquiry into that particular question in Officer Brown's report."

The next day, defendant renewed his objection to the court's ruling and argued that the statement in Brown's

report should be admitted under the doctrine of completeness and under OEC 403 and OEC 609-1. The state responded:

"I think the problem is that Defense Counsel's starting point is based on a presumption * * * that isn't correct. He's * * * presuming that one sentence in the police report about forwarding it to the DA's office and recommending a charge of Resisting Arrest means that the officer was concerned about civil liability. The officer testified he was not concerned about civil liability.

"[Defense Counsel has] certainly read many police reports, and in many police reports that kind of language, a forward to the DA's office for prosecution[,] is in all those police reports. That's simply what the sentence is.

"And [Defense Counsel is] starting from a premise that just is incorrect. It's not probative of anything. It doesn't impeach * * * Officer Brown's credibility because it has nothing to do with credibility. It's just forwarding on to the DA's office for a charging decision * * *."

Defense counsel responded:

"[U]nder [OEC] 609[-1], evidence of bias, is always relevant. The State is arguing that it's * * * not bias, it doesn't show bias, and that's an argument that [it] can make to the jury, but I think, on its face, the statement that, 'Based on the injuries [defendant] received, we should charge this guy with something,' indicates a bias to get a conviction because of the injuries, that 'We should charge [defendant] because of his injuries.' That's the statement."

The court ruled,

"It's a recommendation to the DA as to what to charge, and I do believe that that has a tendency to distract, because the jury at that point is going to start thinking like, 'Oh, there's some big conspiracy that the DAs should have charged him with something else and they didn't,' and it's definitely going to distract them from the evidence at hand, and all of a sudden they're going to be focusing on whether he's guilty of Resisting Arrest or not, so it definitely does distract them.

"And I'm just not finding that there is sufficient basis of relevance that outweighs the prejudice and interference with the jury's decision-making abilities in this case, and so I am excluding the evidence."

At the conclusion of the trial, the jury convicted defendant for interfering with a police officer, ORS 162.247(1), and offensive physical contact prohibited, PCC 14A.40.040. On appeal, defendant challenges his convictions and assigns error to the trial court's rulings that precluded him from introducing evidence of bias by questioning Brown about the statement in his police report recommending that defendant be charged with resisting arrest.

██ As a preliminary matter, the state contends that defendant did not preserve his argument, because the police report was never offered into evidence and Brown was not examined about it as part of an offer of proof. It is well established, however, that an attorney can make an offer of proof by representing to the court the content of the proffered evidence. That is exactly what defendant did in this case. The state did not object to the *content* of the statement and did not argue to the court that the statement in Brown's report did not say what petitioner represented to the court that it said. The state did object, however, to defendant's *characterization* of the statement, that is, the inference that could be drawn from it—namely, that Brown wanted defendant prosecuted for resisting arrest in an effort to insulate Brown from civil liability or internal police discipline. The content of Brown's statement was fairly before the trial court and, as demonstrated by the colloquies quoted extensively above, 229 Or App at 222-25, defendant sufficiently preserved his argument for our review.

The admissibility of evidence of bias is governed by OEC 609-1 and OEC 403. OEC 609-1(1) provides that, "[t]he credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest." OEC 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

██ Evidence of bias is always admissible, but a court may limit the extent of the inquiry into bias. *State v. Hubbard*, 297 Or 789, 798, 688 P2d 1311 (1984) ("The discretion

of the trial judge to exclude evidence relevant to bias or interest only obtains once sufficient facts have been established from which the jury may infer that bias or interest.").

> "Evidence relevant to the bias or interest of a witness need not always be admitted. The trial judge, in his or her discretion, may limit the extent of such evidence pursuant to OEC 403. However, the cross-examiner must be given the opportunity to establish sufficient facts from which the bias or interest may be inferred, because it is always permissible to show bias or interest."

*Hubbard*, 297 Or at 799-800. Thus, under OEC 609-1, a party is entitled to make an initial showing of bias that presents sufficient facts from which the factfinder may infer bias or interest. If a trial court cuts off the inquiry before the initial evidentiary threshold is met, the court commits legal error. *Id.* at 800. Under OEC 403, a court has discretion to exclude evidence of bias or interest *after* an initial showing of bias or interest has been made if the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." OEC 403; *Hubbard*, 297 Or at 798-99.

In *Hubbard*, the defendant was convicted of second-degree escape, reckless driving, and attempting to elude a police officer. The charges arose from a traffic stop in which the officer suspected that the defendant was intoxicated. The officer and the defendant told different versions of events. According to the officer, the defendant fled a traffic stop, drove home, and repeatedly punched the officer, at which point the officer defended himself with his nightstick. The defendant then retreated inside his home and ultimately hid outside his home for several hours. The defendant testified that, during the traffic stop, he received an urgent page from his wife to come home immediately, asked the officer to accompany him home to respond to the page, which the officer did, but, upon arrival at the defendant's home, the officer unexpectedly attempted to handcuff the defendant, at which point the defendant fled into the house.

The defendant in *Hubbard* attempted to cross-examine the officer about the officer's knowledge of internal police

disciplinary measures that apply to officers who use excessive force during an arrest. The defendant sought to introduce that evidence to show that the officer had a personal interest in the outcome of the case and that his version of events might be slanted because of a desire to avoid departmental discipline. The trial court disallowed that line of questioning, and the Supreme Court reversed, holding that it was error to exclude the evidence, because it was evidence of bias and was evidence that the defendant needed to introduce to make an initial showing of bias. In so holding, the court noted that the trial was "a credibility contest between a police officer and defendant." *Hubbard*, 297 Or at 802.

We applied *Hubbard* in *State v. Shelly*, 212 Or App 65, 157 P3d 234 (2007). In *Shelly*, the defendant was charged with first-degree burglary and first-degree robbery. He sought to question a codefendant at trial about a criminal investigation of the codefendant that stemmed from events that had occurred after the events in the case, as to which the police had not filed charges against the codefendant. The defendant's theory was that the codefendant had lied to the police and told them what they wanted to hear about the defendant so that they would be less inclined to charge the codefendant with the subsequent crime. The trial court excluded that evidence, and we reversed. *Id.* at 68. In so doing, we noted that, "the court's discretion to limit impeachment evidence that goes to interest or bias applies only to the evidence that amplifies, develops, or elaborates an 'initial showing.'" *Id.* at 69. We also noted that the codefendant was "the sole nondefendant witness to the crime" and that the codefendant's credibility was important to the outcome of the trial. *Id.* at 70-71.

■ Here, defendant sought to introduce evidence under OEC 609-1 to impeach Brown for bias or interest. Defendant's theory was that Brown had a motive to exaggerate his testimony about defendant's conduct in order to secure defendant's conviction because Brown could be civilly liable or subject to internal police discipline due to the injuries that defendant had sustained, and a conviction might help insulate Brown from either of those consequences. As noted earlier, defendant sought to introduce three categories of evidence in support of his theory: (1) photographs of and testimony about

defendant's injuries, (2) information about Brown's civil liability training as a police officer, and (3) the statement in Brown's police report.

The trial court allowed defendant to introduce the first two categories of evidence but excluded the statement from Brown's police report. However, Brown's statement is the critical piece of evidence necessary to create an issue about Brown's credibility. Because defendant was unable to cross-examine Brown, the state's only witness, about his personal interest in securing a conviction, all that the jury could understand from the admitted evidence was that defendant had been injured during the arrest and that Brown may have been told in his police training that a risk of civil liability exists for a police officer when the officer struggles with a defendant and the defendant is not convicted for resisting arrest. None of the evidence that the court admitted establishes a factual basis from which the jury could infer that Brown had a personal interest in securing defendant's conviction.

The piece of evidence that lays the factual foundation for the inference that Brown had a personal interest in securing defendant's conviction is Brown's statement in his police report: "I recommend that the DA's office charge [defendant] with Resist[ing] Arrest, based on the injuries he received." Because that is the critical piece of evidence that permits the jury to infer Brown's bias or interest, it was necessary to admit that evidence as part of an "initial showing" of bias under OEC 609-1, and the court erred in excluding it.

That conclusion does not end our analysis. We will affirm a conviction notwithstanding evidentiary error if there is little likelihood that the error affected the verdict. *State v. Hansen,* 304 Or 169, 180, 183-84, 743 P2d 157 (1987). As the Oregon Supreme Court explained in *Hubbard,*

> "[t]he final question to be resolved is whether the trial judge's ruling is reversible. It is error for the trial judge to exclude evidence which establishes sufficient facts from which the bias or interest of a witness may be inferred. If in the context of the entire trial, the exclusion is prejudicial to the party who sought to introduce the impeachment evidence, it is reversible error.

"* * * * *

"* * * [A] decision to exclude evidence relevant to bias or interest which is error, is reversible if it denies the jury an adequate opportunity to assess the credibility of a witness whose credibility is important to the outcome of the trial."

297 Or at 800.

 Here, we are unable to say that the trial court's error in excluding Brown's statement had little likelihood of affecting the verdict. Brown was the only witness for the state. To convict defendant, it was crucial for the jury to believe Brown's testimony. Additionally, there were factual differences between Brown's version of events leading up to the point that he took defendant to the ground and defendant's witness's version of those events. On cross-examination of defendant's witness, the state suggested that the discrepancies were the result of defendant's witness being preoccupied with caring for Bulloch, as compared with Brown's focus, as a trained police officer, on making careful observations. Of course, under defendant's theory of Brown's bias, an alternate explanation for the discrepancy is that Brown had a personal interest in securing defendant's conviction and may have exaggerated his testimony about defendant's conduct. The statement in Brown's report was the crucial piece of evidence that the jury needed in order to evaluate Brown's credibility, which was an essential component of the state's evidence against defendant. Because the jury did not hear that evidence, they were unable to properly evaluate Brown's credibility. Therefore, we cannot say that the error in excluding that statement had little likelihood of affecting the verdict.

Reversed and remanded.