SHORR, J.
*284 Defendant was convicted of one count of sexual abuse in the first degree against A, a child under the age of 14 at the time of the abuse, and two counts of sexual abuse in the first degree and one count of attempted sexual abuse in the first degree against C, also a child under the age of 14 at the time of the abuse. Although they stemmed from unrelated incidents and involved different victims, the charges against defendant were consolidated for trial based on a motion by the state.[1]
Defendant raises three assignments of error: First, the trial court erred by excluding evidence of defendant's prior prosecution and acquittal for similar charges, because the evidence was relevant to show witness bias and to support defendant's theory that he took special precautions around children; second, the trial court erred by denying defendant's motion for a mistrial; and, third, the trial court erred by excluding testimony about defendant's character for sexual propriety *906 and for being law abiding. We reject the second and third assignments without further written discussion. As to defendant's first assignment of error, we conclude that (1) defendant preserved his argument that the trial court erred by excluding the evidence when it was offered to establish bias; (2) the court committed legal error when it excluded the evidence in light of defendant's bias theory; and (3) the error was not harmless. Accordingly, we reverse and remand.
I. FACTS AND PROCEDURAL HISTORY
The relevant facts are procedural. Defendant was charged with three counts of sexual abuse in the first degree and one count of attempted sexual abuse in the first degree against C, a student whom defendant was tutoring; defendant was also charged with one count of sexual abuse in the first degree against A, his son's stepdaughter. At a consolidated trial, a jury found defendant guilty of all but one count of sexual abuse in the first degree in the case involving C; the jury also found defendant guilty in the case involving A.
*285 Before trial, defendant moved for a preliminary ruling from the trial court to exclude evidence of a 2008 prosecution and acquittal of defendant involving sexual abuse of a child. The state responded that it did not intend to use evidence of the 2008 case in its case-in-chief unless defendant "opened the door" to that evidence. The court did not make a definitive ruling on the motion at that time, explaining from the bench that "I don't know what evidence is going to be brought forward. * * * And if something comes up, we'll deal with it at that time in the trial."
Despite asking the trial court to exclude evidence of the 2008 case, defendant explicitly referenced that case during voir dire after a potential juror alluded to the fact that she was aware of defendant's past. Defendant asked the potential juror if she was referring to the 2008 case in which defendant was "charged with something similar" and subsequently "exonerated." The potential juror confirmed that she was, and went on to state that she could not be fair in her judgment due to the 2008 charges against defendant. The court then excused the potential juror.
Following voir dire , but before opening statements, defendant moved to introduce evidence of the 2008 case. Defendant argued that that evidence should be admitted because "I opened the door in jury selection, and I intend to continue to open the door. * * * [I]t is necessary to reference the 2008 matter * * * in order to present a complete defense. * * * I intend to bring it up in my opening statement." The following exchange then ensued:
"THE COURT: And why do you consider [the 2008 case] to be relevant in this trial?
"[DEFENSE COUNSEL]: It's relevant in this trial because * * * [m]any of the witnesses in this case knew that [defendant] had been accused of sex abuse. For example, one of the state's listed witnesses [A's aunt in the case involving A] indicated that when the disclosure was made to her by [A] that [she] was concerned because she knew about the prior allegation against [defendant].
"I anticipate that there is also going to be evidence that [A's parents] had a parenting agreement that [A's mother] would not allow the children to go to [defendant's] house *286 because [A's father] was aware that there had been this previous allegation.
"And so [defendant] was basically tarred and feathered with the allegation by people's opinion despite the exoneration at trial.
"Number two is, it is relevant because [defendant] and other family members, and I expect that he will testify, will indicate that because of this false accusation in 2008, that he took special precautions. He tended to be very sort of careful and shell shocked because of what happened to him. And that he was very mindful of his actions and his words around children, both in terms of his grandchildren and other children. And those are things that go to his defense in testing the state's evidence, and we're entitled to raise them."
The trial court then gave the state the opportunity to respond. The state did not *907 respond specifically to defendant's explanation of the evidence's relevance. Instead, the state argued that it had not expected defendant to bring up the 2008 case because defendant had previously moved to exclude that evidence and that allowing defendant to use the 2008 case would require a "completely different trial strategy than the one we were about to do." In rebuttal, defendant argued that the state was
"fully cognizant that [evidence of the 2008 case] was a potential issue, because she's got * * * a police officer who was involved in the previous investigation [on her witness list].
" * * * * *
"I am doing my appropriate advocacy, and I'm allowed to do this, and it is relevant, it is necessary. And I'm not sure that I've covered every basis for why it's relevant * * * but I've certainly given you a couple reasons why it's relevant, and it is necessary and it is important."
The trial court then ruled that
"I find that it's entirely irrelevant to these charges that are presently before us. It is a collateral matter. Trying to prove or disprove what occurred several years ago in front of a different jury is the exact definition of a collateral issue. And it would be confusing and distort the jury away *287 from the issues they have in this case of these particular allegations, and whether or not the state has proved those allegations beyond a reasonable doubt.
"Given the reasons that it is important to the defense there is no reason that a defense witness cannot present testimony that the defendant, if he wishes to testify about this, was cautious, because he didn't want to see allegations of child sex abuse. * * * [Y]ou don't have to bring up a prior prosecution and trial, and acquittal.
"So for all those reasons, we aren't going to talk about the previous trial and an acquittal. There is definitely no reason to bring it up in the opening statements. And if there is some basis for that as evidence comes forward, we can always reconsider that matter, but I haven't heard any argument before me on why it should be admissible in this case. I do rule it is collateral, it's confusing, and it is really a side issue this jury doesn't need to deal with, and makes it overly complex and confusing.
" * * * And I'll just put everyone on notice that if someone thinks that there is a basis to ask a question about this prior case, I'm going to need to do that outside the presence of the jury, but I cannot think of a reason that would justify bringing forward this prior case."
Defendant then moved for a mistrial, because "I am now being denied the opportunity to go into the matter when it has been brought up to the jury panel." The trial court rejected defendant's motion from the bench and brought the jurors in to hear opening statements.[2]
The following day, while addressing other evidentiary issues outside the presence of the jury, defendant again moved to introduce evidence of the 2008 case. Defendant argued that he "may offer evidence of a pertinent trait of character as a defense to the charge. So this dovetails with what I was indicating to you regarding [defendant's] state of mind in being extremely cautious and careful around children after [the] accusation against him in 2008." Defendant went on to explain that, "as a result of that [2008 acquittal, he] was very, very careful, because he wanted to avoid *288 being precisely in this situation. And on that limited basis, I submit that it is relevant and it's part of his defense." Once again, the state objected that
"basically this would be retrying an entire case within this case if that issue gets raised. * * * There would be all sorts of issues that would be collateral and highly confusing to the jury should we get into this matter. I don't think it's relevant, and certainly the defense has other alternatives for explaining why a defendant would be cautious around children."
The trial court then ruled that it would "stay with [its] original ruling that we are not *908 going to discuss or allow any mention of evidence concerning whatever occurred about a previous allegation, court trial and determination by factfinder in that matter."
During trial, members of A's family testified for the state, including (1) A's mother; (2) A's aunt, who is the sister of A's father; (3) A's half-brother, who is the child of A's mother and defendant's son; and (4) A herself. Although defendant had identified A's father and another aunt as potential witnesses when he moved to introduce evidence of the 2008 case, neither testified at trial. Neither defendant nor the state referenced the 2008 case while questioning witnesses.
On appeal, defendant assigns error to the trial court's ruling excluding evidence of the 2008 case. Specifically, defendant asserts that the evidence "would have shown the bias of the state witnesses, including complainant [A] and her family." Defendant elaborates that "[t]he bias was in the form of hostility towards defendant stemming from the stigma of having previously been accused of child sexual abuse-a stigma that may easily linger despite an acquittal, and perhaps because of an acquittal." (Emphasis in original.) In addition, defendant reiterates his argument that evidence of the 2008 case was relevant because "it would have corroborated defendant's testimony that he took special precautionary measures around children."
II. ANALYSIS
Defendant argues that the trial court "erroneously concluded that [evidence of the 2008 case] was irrelevant"
*289 even though "the evidence would have shown the bias of the state witnesses, including complainant [A] and her family." The state responds, first, that defendant has not preserved that issue for appeal; second, even if defendant preserved the issue, the trial court properly excluded the evidence under OEC 403 ; and, third, any error that the court may have committed with regard to the admissibility of that evidence was harmless. We address each of those arguments below.
A. Preservation
The primary purposes of the preservation rule are to allow the trial court to consider a contention and correct or avoid any error, to allow the opposing party an opportunity to respond to a contention, and to foster full development of the record. Peeples v. Lampert , 345 Or. 209, 219-20, 191 P.3d 637 (2008). "A party ordinarily may preserve an issue for review merely by raising an issue at trial; alternatively (and preferably), a party may preserve an issue by raising the issue, identifying a source for the party's position, and advancing a particular argument." State v. Haugen , 349 Or. 174, 190, 243 P.3d 31 (2010). As a general rule, a party must make an offer of proof to preserve an argument that the trial court erred by excluding evidence. Id . at 191, 243 P.3d 31. The purpose of that rule "is to assure that appellate courts are able to determine whether it was error to exclude the evidence and whether any error was likely to have affected the result of the case." Id. (internal citation omitted).
We review the sufficiency of defendant's proffer in this case by considering whether it fulfilled the purposes that underlie the preservation requirement, including fairness and judicial efficiency. Id. at 190, 243 P.3d 31. With that standard in mind, we conclude that defendant preserved his argument that evidence of the 2008 case was necessary to establish facts from which the jury could infer witness bias. When defendant first offered the evidence, he indicated to the court that he believed the evidence was relevant for two distinct purposes: first, to establish witness bias ("It's relevant in this trial because * * * [m]any of the witnesses in this case knew that [defendant] had been accused of sex abuse [in 2008]. * * * And so [defendant] was basically tarred and feathered *290 with the allegation by people's opinion despite the exoneration in the trial."); and, second, to establish defendant's precautionary theory ("Number two is, it is relevant because [defendant] and other family members, and I expect that he will testify, will indicate that because of this false accusation in 2008, that he took special precautions."). Shortly thereafter, defendant told the court, "I've certainly given you a couple reasons why it's relevant, and it is necessary and it is important." There is little doubt that defendant *909 was offering evidence of the 2008 case for two distinct purposes. And while defendant's explanation for why the evidence was relevant to show bias may have been broadly stated in only general terms, the issue of bias was nonetheless "presented clearly to the initial tribunal." See Davis v. O'Brien , 320 Or. 729, 737, 891 P.2d 1307 (1995).
The state argues that defendant did not preserve his argument because he did not attempt to introduce evidence of the 2008 case to show bias when particular witnesses took the stand during trial. The state explains that the trial court, when it excluded the evidence during a pre-trial hearing, told the parties that it would reconsider the admissibility of that evidence "if there is some basis for that as evidence comes forward." But the state appears to miss a key implication of the court's later rulings on the admissibility of the evidence; after the court heard defendant offer the evidence both to establish witness bias and to support defendant's precautionary theory, the court stated it had not heard "any argument * * * on why it should be admissible in this case" and emphasized that it "cannot think of a reason that would justify bringing forward this prior case." When defendant sought to introduce the evidence again during trial, the court reiterated that "we are not going to discuss or allow any mention of evidence concerning whatever occurred about a previous allegation, court trial and determination by factfinder in the matter." By subsequently explaining its ruling in those broad terms after defendant made additional attempts to introduce the evidence, the court categorically excluded the evidence to support those theories that defendant had already presented. As such, defendant was not required to continue to raise the admissibility of the evidence on those theories each time another *291 opportunity to do so arguably arose. See State v. Olmstead , 310 Or. 455, 461, 800 P.2d 277 (1990) ("[W]hen the trial court excludes an entire class of evidence by declaring, in advance, that it is inadmissible as a matter of law, the ruling renders a further offer futile.").
In sum, defendant's initial offer "presented clearly" his position that the 2008 case was relevant to establish witness bias. Defendant's oral motions to admit the evidence presented the court with the opportunity to consider its admissibility for the purpose of establishing bias and to avoid any error that might arise from excluding evidence offered in support of that theory. See Peeples , 345 Or. at 219, 191 P.3d 637 ; Shields v. Campbell , 277 Or. 71, 77, 559 P.2d 1275 (1977) ("A party owes the trial court the obligation of a sound, clear, and articulate motion, objection, or exception, so as to permit the trial judge a chance to consider the legal contention or to correct an error already made."). Defendant's offer also permitted the state, as the opposing party, to consider and respond to the contention that knowledge of the 2008 case might affect how certain witnesses view defendant and color their testimony accordingly. See Peeples , 345 Or. at 220, 191 P.3d 637. And, while defendant first identified all of the specific witnesses who were allegedly biased on appeal, the offer at trial indicated with sufficient clarity that various members of A's extended family, specifically including A's mother and aunt, were aware of the 2008 case and may have been biased against defendant because of it. Defendant did not flesh out in great detail the substance of his argument that the evidence was necessary to show witness bias, but we conclude that he raised the issue of bias, identified A's family members as having bias, and described the source of that bias in sufficiently clear and direct terms to preserve the issue for appeal.
B. Admissibility
Having held that defendant preserved the issue of whether the offered evidence was admissible to show witness bias, we turn to whether the trial court erred in excluding that evidence. Whether evidence of bias is admissible is governed by OEC 609-1 and OEC 403. State v. Muldrew , 229 Or. App. 219, 226, 210 P.3d 936 (2009). Under OEC 609-1(1), *292 "[t]he credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest." Under OEC 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the *910 jury, or by considerations of undue delay or needless presentation of cumulative evidence."
Under Oregon law, "it is always permissible to show the interest or bias of an adverse witness." State v. Hubbard , 297 Or. 789, 796, 688 P.2d 1311 (1984). Because evidence of bias relates to witness credibility, "[i]t need not be relevant to another matter of consequence" to be admissible. Id . Further, the offered evidence "need only have a mere tendency to show bias" to be admissible. Id .
Although the trial court may limit the extent of an inquiry into a witness's bias under OEC 403, "the cross-examiner must be given the opportunity to establish sufficient facts from which the bias * * * may be inferred." Id. at 799-800, 688 P.2d 1311. In other words, "the court's discretion to limit impeachment evidence that goes to * * * bias applies only to the evidence that amplifies, develops, or elaborates an 'initial showing.' " State v. Shelly , 212 Or. App. 65, 69, 157 P.3d 234 (2007) (quoting Hubbard , 297 Or. at 799, 688 P.2d 1311 ). Thus, under OEC 609-1(1), "a party is entitled to make an initial showing of bias that presents sufficient facts from which the factfinder may infer bias," and, if the court attempts to curtail that inquiry before the initial evidentiary threshold is met, the court commits legal error. Muldrew , 229 Or. App. at 227, 210 P.3d 936 (citing Hubbard , 297 Or. at 800, 688 P.2d 1311 ). Likewise, under OEC 403, a court has the discretion to exclude evidence of bias only "after an initial showing of bias * * * has been made[.]" Id. (citing Hubbard , 297 Or. at 798-99, 688 P.2d 1311 (emphasis in original) ).
Here, the trial court entirely foreclosed the possibility that defendant could establish witness bias stemming from knowledge of the 2008 case. Defendant offered the evidence based, in part, on a theory that various state witnesses, members of A's family, were either directly or indirectly biased against him because they were aware that he had been accused of sexual abuse against a child in the past.
*293 Even though he had been acquitted, defendant believed that he was "tarred and feathered" by those past accusations. As discussed above, defendant adequately explained that theory to the court. In doing so, defendant raised the issue that A's family believed that defendant had escaped conviction for his past sexual abuse. From that, a jury could infer that the observations and testimony of A's family could be influenced by their desire to see defendant convicted in this case. See State v. Tyon , 226 Or. App. 428, 441, 204 P.3d 106 (2009) ("[Officer] Morehead's belief that defendant had been guilty of DUII and his knowledge that he had escaped conviction could have allowed the jury to infer that Morehead's observations and testimony would be colored by his desire to ensure defendant's conviction in this case."). Put differently, the excluded evidence had at least a "mere tendency to show bias." See Hubbard , 297 Or. at 796, 688 P.2d 1311.
In sum, the trial court prevented defendant from making even an initial showing of bias. The court's explanation that it found that the evidence of the 2008 case was "collateral, * * * confusing, [and] really a side issue" is unavailing because, when considering evidence of bias, the court's discretionary authority under OEC 403 only applies once the proponent of the evidence has first had the chance to "present[ ] sufficient facts from which the factfinder may infer bias." Muldrew , 229 Or. App. at 227, 210 P.3d 936 (citing Hubbard , 297 Or. at 800, 688 P.2d 1311 ). The court did not give defendant that chance in this case. Accordingly, we conclude that the court committed legal error.
C. Harmless Error
Having concluded that the trial court erred in excluding evidence of the 2008 case to establish witness bias, we turn to whether that error prejudiced defendant. Our task when assessing the harmfulness of a trial court's error is to determine whether the "particular issue to which the error pertains has a relationship to the jury's determination of its verdict, and, if so, the likelihood that the error affected the verdict." Tyon , 226 Or. App. at 442, 204 P.3d 106 (citing State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003) ). An erroneous decision to exclude evidence relevant to bias "is reversible if it *911 denies the jury an adequate opportunity to assess the *294 credibility of a witness whose credibility is important to the outcome of the trial." Hubbard , 297 Or. at 800, 688 P.2d 1311.
Here, we cannot say that the trial court's error in excluding the evidence had little likelihood of affecting the verdict. Evidence of bias goes directly to witness credibility, which is especially important in cases, like this one, where there is no physical evidence or eyewitness testimony apart from the victim, and the jury must convict or acquit based entirely on conflicting witness testimony. See, e.g. , Muldrew , 229 Or. App. at 230, 210 P.3d 936 ("Brown was the only witness for the state. To convict defendant, it was crucial for the jury to believe Brown's testimony. * * * Because the jury did not hear [evidence from which they could infer Brown was biased against the defendant], they were unable to properly evaluate Brown's credibility."). It does not appear from the record that defendant was able to present any alternative evidence of bias caused by the prior allegations against him. In Hubbard , the Supreme Court explained that, "[i]f numerous other witnesses testified to a given fact, then the exclusion of evidence of a witness' bias * * * might be 'harmless error' in the context of a given trial." 297 Or. at 800, 688 P.2d 1311. By contrast, where there is "no corroborating evidence, the interests of a fair trial require that the adverse party be given ample opportunity to establish the witness' bias[.] To fail to allow cross-examination sufficient to establish facts from which the witness' bias may be inferred in such a situation is reversible error." Id . In this case, the trial court's ruling foreclosed the possibility that any witness could be cross-examined about the 2008 case. And the record reflects that defendant was unable to present other evidence of bias by A's family-bias that might well have "colored the jury's assessment of the witnesses' objectivity"-stemming from a belief that defendant "had escaped punishment the first time around." Significantly, A's family members testified about critical facts regarding defendant's conduct toward A. Because the jury did not hear evidence of possible bias, it was unable to properly evaluate witness credibility in the case involving A.
Although our decision is based on the error in excluding evidence of defendant's acquittal of the earlier sexual abuse charges as evidence of bias involving A and her *295 family, it follows that the exclusion also affected the charges involving C. As explained above, defense counsel sought to argue that the earlier sexual abuse charges, and defendant's acquittal on them, caused defendant to take special precautions when he was around children and that that fact made it less likely that he had committed the charged conduct against either A or C. The trial court concluded that evidence of the earlier sexual abuse charges and acquittal was irrelevant to that defense under OEC 401, and that, under OEC 403, the risk of confusing the jury regarding how to consider the prior charges and acquittal in a new case substantially outweighed the evidence's probative value. We disagree that the evidence of the prior charges and acquittal was irrelevant under OEC 401. That evidence at least had some tendency to support defendant's argument that he took special precautions when around children because of his experience with the prior charges and acquittal. Further, because the same evidence would have been admitted and before the jury in any event to support defendant's bias theory in the consolidated trial involving victim A, some potential for resulting jury confusion already existed. In that light, we cannot say that the error had little likelihood of affecting the verdict on the charges involving C and, consequently, we reverse defendant's convictions on those charges as well.
In sum, we cannot conclude that there is little likelihood that the erroneous exclusion of the evidence affected the verdict. Accordingly, we conclude that the error was not harmless.
III. CONCLUSION
We conclude that (1) defendant preserved his argument that evidence of the 2008 case was relevant to establish witness bias; (2) the *912 trial court erred in excluding the bias evidence; and (3) the error was not harmless.
Reversed and remanded.

The case involving A is Case No. 14C42644; the case involving C is Case No. 14C46943.

In defendant's second assignment of error, he contends that the trial court abused its discretion in denying his motion for mistrial, but, as previously noted, we reject that assignment without further discussion.