No. 353 April 29, 2026 175

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AUSTIN JOHN BERGEVIN,
*Defendant-Appellant.*

Washington County Circuit Court
22CR33585; A180174

Andrew Erwin, Judge.

Submitted October 23, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

POWERS, J.

Reversed and remanded.

**POWERS, J.**

Defendant appeals from a judgment convicting him of robbery in the first degree, unauthorized use of a vehicle (UUV), possession of a stolen vehicle (PSV), driving while suspended or revoked, felon in possession of a firearm, and theft in the first degree, arising out of an altercation with his girlfriend, S, where defendant allegedly took the keys to S's car at gun point and drove off with her car. In a single assignment of error, defendant challenges the first-degree robbery, UUV, and PSV convictions by asserting that the trial court erred when it did not allow the defense to cross-examine S and introduce evidence of a prior 9-1-1 call to impeach S's testimony. As explained below, because the trial court erred by preventing defendant from making an initial showing of bias, we reverse and remand.

## BACKGROUND

Because the parties are familiar with the factual and procedural history, we do not provide a full recitation of that background for this nonprecedential memorandum opinion. Suffice it to say that defendant proceeded to a jury trial in which the state presented evidence that, during an argument with S, whom he dated for approximately six months, defendant pointed a rifle at her, took her car keys, and stole her car. Several days later, when investigating a separate theft, police found S's car and defendant. At trial, defendant disputed first-degree robbery, UUV, and PSV charges, but conceded guilt on the other charges. In defendant's view, S was intoxicated when they were arguing, she threw her car keys at him, and told him to leave thus giving consent to take her car.

Approximately a month after defendant was arrested, police interviewed S as part of their investigation. During that interview, she told police that defendant had never been violent with her. She also told police, however, that two days before the underlying incident, she called 9-1-1 to make a report about defendant in another matter. During that 9-1-1 call, S noted that defendant "has been violent and he's being aggressive, and he hit me[.]"

During his trial, defendant intended to use a police report arising out of the investigation into the underlying

incident to impeach S's testimony because, in his view, it conflicted with the 9-1-1 call from two days before the incident. The trial court, *sua sponte*, stopped defendant's line of cross-examination when defendant asked S if defendant had ever been violent with her. The trial court reasoned that that line of questioning was leading to improper character evidence. Defense counsel explained, however, that it was foundational for impeachment evidence. Although skeptical, the trial court allowed defense counsel to ask S questions outside of the presence of the jury.

At one point, during the questioning with the jury excused, defense counsel asked S if she remembered telling the police in a follow-up interview that defendant had never been violent with her. She did not remember saying that and she testified that she did remember telling people that "he was never abusive." At that point the court interjected and noted that it was confused about the timeline and wanted to go back and explain when these events happened. Defense counsel showed the court the police report with S's statement that defendant had not been violent and reiterated that he believed defendant was entitled to ask questions to establish "the extent of her understanding or recollection of violence that did or did not happen in this relationship, given these inconsistencies." The trial court determined that defendant's intended argument was impeachment "on an entirely different collateral matter." For that reason, the trial court excluded the testimony and evidence.

## ANALYSIS

On appeal, defendant assigns error to the trial court's denial of his cross-examination of S regarding the 9-1-1 call from the day prior. Defendant presents three bases for why the trial court erred. Defendant contends that he should have been allowed to introduce the evidence to impeach S as (1) biased against defendant and thus having a reason to fabricate claims; (2) making prior inconsistent statements of violence against defendant; and (3) having a propensity to make false claims that S later recanted. Because our decision on defendant's argument about bias impeachment evidence requires reversal, we do not reach defendant's other arguments.

Defendant argues that the 9-1-1 call, together with S's statement in a police report was intended to show that S was biased against defendant. According to defendant he should have been allowed to cross-examine S on those two pieces of evidence to show S's bias against him. Defendant contends that the trial court's decision precluded him from properly cross-examining S in violation of his rights under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution.

The state argues that defendant did not preserve this argument in the trial court. On the merits, the state argues that defendant's offer of proof was insufficient to support his bias theory. The state also contends that defendant's argument mischaracterizes the trial court's determination. The state suggests that the trial court merely precluded defendant from asking about the 9-1-1 call and her subsequent statement to the officers a month later. However, the trial court "did not preclude defendant from asking [S] about bias." Finally, the state argues that any error the trial court may have committed was harmless because the probative value of the phone call and the 9-1-1 report was marginal and defendant was still able to ask S if she had hostile feelings toward him.

We review for legal error a trial court's decision to preclude a party from making an initial showing of a witness's bias under OEC 609-1. *State v. Schiller*, 341 Or App 91, 94, 572 P3d 1110 (2025). Importantly, it is "always permissible to show the interest or bias of an adverse witness," *State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984) (internal citations omitted), including a "witness's motive to fabricate testimony or allegations against a criminal defendant." *State v. Hassan*, 315 Or App 324, 332, 501 P3d 1096 (2021). Under OEC 609-1(1), "a party is entitled to make an initial showing of bias that presents sufficient facts from which the factfinder may infer bias or interest." *State v. Muldrew*, 229 Or App 219, 227, 210 P3d 936 (2009).

At the outset, our review of the record shows that defendant explained to the trial court that the proposed cross-examination was intended to impeach S's testimony. Although defendant did not use the term "bias," it is evident

that he planned to impeach S based on perceived inconsistencies, and when defense counsel attempted to explain his position further, the trial court explained that it was convinced that it was impeachment on a collateral matter. Given the state of the record, we conclude that the state and the trial court were on notice that defendant intended to impeach S's testimony, which included the potential impeachment for bias. *See State v. Walker*, 350 Or 540, 552, 258 P3d 1228 (2011) (observing that, for purposes of preservation, the "appropriate focus * * * is whether a party has given opponents and the trial court enough information to be able to understand the contention and to fairly respond to it"). Thus, we reject the state's preservation argument and conclude that defendant sufficiently preserved his argument for appellate review.

Turning to the merits, the trial court did not permit defendant to make an initial showing of bias. The trial court initially stopped defendant's line of questioning *sua sponte* because it believed that defendant was about to introduce improper character evidence. After the jury was excused, defendant explained that the line of cross-examination was intended to lead to impeachment evidence. Although the court permitted defendant to question S outside of the presence of the jury to see how it would lead to impeachment evidence, the record shows that throughout the course of that questioning, the trial court interjected several times to guide defendant's questions. As such, the trial court did not permit defendant to make his initial showing of bias because the court inhibited defendant from questioning S. In our view, the trial court erred because it should have allowed defendant to make an initial showing of bias. After an initial showing had been made, then the court could have exercised its permissible discretion to limit impeachment evidence; however, it could not limit that impeachment evidence before an initial showing was made. *See State v. Shelly*, 212 Or App 65, 69, 157 P3d 234 (2007) (explaining that a trial court's "discretion to limit impeachment evidence that goes to interest or bias applies only to evidence that amplifies, develops, or elaborates an 'initial showing'"). Because the trial court curtailed defendant's inquiry "before the initial evidentiary threshold [was] met," defendant was unable

to make an initial showing of bias. *See Muldrew*, 229 Or App at 227 (noting that, under OEC 609-1, "a party is entitled to make an initial showing of bias that presents sufficient facts from which the factfinder may infer bias or interest" and concluding that, if a court "cuts off the inquiry before the initial evidentiary threshold is met, the court commits legal error"). That error is not harmless under *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003), and *State v. Lopez*, 241 Or App 670, 680, 250 P3d 984 (2011), and sufficient to require reversal thereby obviating the need to reach defendant's other arguments.

Reversed and remanded.