10                    June 4, 2025                    No. 483

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ENRIQUE PEREZ MARTINEZ,
aka Enrique Martinez Perez, aka Enrique Perez Martinez,
*Defendant-Appellant.*

Multnomah County Circuit Court
20CR15737; A179691

Shelley D. Russell, Judge.

Submitted December 30, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sarah De La Cruz, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rolf C. Moan, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Kistler, Senior Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Defendant appeals a judgment of conviction for 10 counts of first-degree sexual abuse, ORS 163.427. In three assignments of error, he argues that the trial court erred by (1) admitting "other acts evidence" under OEC 404(4), (2) excluding as irrelevant testimony that he offered for impeachment of a witness, and (3) striking a defense expert witness's testimony as vouching. Because the trial court did not abuse its discretion in admitting the other acts evidence, and it did not err in excluding the impeachment testimony and striking the expert's testimony, we affirm.

## I.   BACKGROUND

As context for our discussion, we provide a brief overview of the historical facts and procedural history. We provide additional facts and procedural history in our discussion of each assignment of error.

Defendant was convicted of committing ten counts of first-degree sexual abuse against his stepdaughter, MT, who was in fifth grade at the relevant times. Defendant lived with his then-wife, AT, and her daughters MT and MET. Defendant's biological daughter moved into the house for a period of time as well. The three girls lived in one bedroom, and AT and defendant lived in the second. AT had an "open door policy" in the home, where she required the doors to be open unless someone was changing clothes or showering.

When she was 17 years old, MT disclosed that, when she was around 11 years old, defendant would give her "massages" in his bedroom that involved rubbing her against him. Defendant had taken massage therapy classes and would frequently massage AT, MT, MET, and his biological daughter in the living room, but MT alleged that these massages were different. Defendant testified that he did give MT massages when AT was present, but he denied the allegations that he did so inappropriately, upstairs in the bedroom, or when AT was not present. The state sought to present evidence that defendant had opened the closed bedroom door and entered the girls' bedroom on occasions when he knew that they would be undressed to show that he had

a sexual interest in young females, and the trial court ruled that that evidence would be admissible.

Defendant and AT attended a Jehovah's Witness church. AT discussed MT's allegations with a church elder, David Gomez, who ultimately informed police. On several occasions, AT had also previously discussed with Gomez her desire to divorce defendant. Defendant sought to call Gomez as a witness to testify about the church and how it handles reports of abuse, along with the church's views on divorce. Defense counsel explained that "I want to ask about the divorce and a biblical purpose *** and ultimately for impeachment." Defendant intended to impeach AT by showing that she had reason to fabricate her testimony due to her bias or interest against defendant because she wanted a divorce sanctioned by the church. The state argued that the evidence was not relevant and was not proper impeachment because other witnesses had already testified about the church and divorce. The court excluded the testimony as irrelevant, describing it as "a collateral matter" and noting that defendant still had AT under subpoena and could "call her back and examine her."

Defendant called Dr. Daniel Reisberg, a research psychologist, as a memory expert. Much of his testimony focused on how factors such as the passage of time and the intensity of emotion connected to an event can affect a person's memory. During his testimony, he described MT's memory as a kind that is "very likely to fade over the years" and plausibly "not particularly clear, not particularly crisp." The state objected on the grounds of vouching, and the trial court instructed the jury to "disregard the particular testimony relating to [MT's] memory itself."

## II.   DISCUSSION

### A.   OEC 404(4): Other Acts Evidence

In his first assignment of error, defendant argues that the trial court erred when it "admitted evidence that defendant was present in a bedroom when [MT's] cousin exited the shower while wearing a towel and other girls were changing clothes to show defendant's sexual interest

in young girls" under OEC 404(4),[1] because it "misjudged the probative value of the evidence and underestimated the danger of unfair prejudice that the evidence posed" under OEC 403.[2]

   1.  *Legal Framework*

      "We review a trial court's determination as to whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice under OEC 403 for abuse of discretion." *State v. Cave*, 298 Or App 30, 38, 445 P3d 364 (2019). Our review is limited to the record that was before the trial court at the time it made its ruling. *State v. Warren*, 291 Or App 496, 510, 422 P3d 282, *rev den*, 363 Or 744 (2018).

      Under OEC 404(3), "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith" (*i.e.*, the person's propensity). However, the Supreme Court recently explained in *State v. Davis*, 372 Or 618, 633, 553 P3d 1017 (2024), that in criminal trials, OEC 404(4)—not OEC 404(3)—applies to evidence of a defendant's "other acts."

      OEC 404(4) does not prohibit character or propensity evidence and "provides simply that, in criminal cases,

---

[1]  OEC 404(4) provides:

   "In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

   "(a)  Certain other rules of evidence] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

   "(b)  The rules of evidence relating to privilege and hearsay;

   "(c)  The Oregon Constitution; and

   "(d)  The United States Constitution."

Defendant also asserts that the trial court incorrectly admitted the evidence on a nonpropensity theory of relevance under OEC 404(3). That contention is not supported by the record. Because the trial court did not admit the evidence under a nonpropensity theory of relevance under OEC 404(3), we do not address defendant's arguments regarding OEC 404(3).

[2]  OEC 403 provides:

   "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

evidence of 'other crimes, wrongs or acts' by the defendant generally is admissible if it is relevant." *State v. Martinez*, 335 Or App 643, 650, 559 P3d 907 (2024), *rev den*, ___ Or ___ (2025). In fact, OEC 404(4) "does not require the state to prove to the court that other acts evidence is offered for a purpose other than to prove character or that the relevance of that evidence does not rely on propensity reasoning." *Davis*, 372 Or at 633.

Nevertheless, for other acts evidence to be admissible under OEC 404(4), "the evidence must be relevant under OEC 401 and must be admissible under OEC 403." *State v. Hutchinson*, 337 Or App 426, 429, 563 P3d 986 (2025) (citing *Martinez*, 335 Or App at 650). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. Under OEC 403, even relevant evidence "may" be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Therefore, once a trial court has determined that evidence is relevant under OEC 401 and admissible under OEC 404(4), it must conduct OEC 403 balancing before admitting the evidence, meaning that it "must exclude even relevant evidence under OEC 404(4) when, in the exercise of its discretion, it determines that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Davis*, 372 Or at 634. OEC 403 "favors admissibility, but ultimately is discretionary," and "the question is whether, on this record, admission of the evidence was one—among multiple—legally permissible outcomes." *Id.* at 641.

Other acts evidence falls on a spectrum of admissibility when considered in conjunction with OEC 403. *Hutchinson*, 337 Or App at 430. At one end is evidence offered for a nonpropensity purpose, which is generally admissible under OEC 403. *Id.* at 433 (evidence of the defendant's past violent conduct was admissible for nonpropensity purpose of establishing the victim's knowledge and fear as relevant to coercion charges). At the other end is "evidence that relies solely on propensity reasoning or goes only to character," which is "classically impermissible." *Id.* In the middle, there

is evidence that implicitly relies on character reasoning "*to some degree*, or where, despite a noncharacter purpose being offered by the proponent of the evidence, a jury or fact-finder could perceive the evidence as relying on character and action in conformity with character as its source of relevance." *Davis*, 372 Or at 636 (emphasis in original).

Recently, in *Martinez*, we articulated the analytical framework set forth by the Supreme Court in *Davis* to determine whether a trial court abused its discretion in admitting other acts evidence under OEC 404(4) and OEC 403 as follows:

> "First, the court should parse the other 'acts' into constituent parts, where possible, to aid in determining the degree of character present in the proponent's theory of relevancy. Second, the court should consider the probative value of each constituent part of the evidence to determine whether its relevance relies on character reasoning expressly or by implication. Third, the court, in its discretion, may admit evidence that does not primarily or substantially derive its relevance from character-based propensity reasoning. Finally, whether a court acts within its permissible range of discretion to admit such evidence may depend on whether the court took action to mitigate any unfair prejudice, such as redacting inflammatory details, limiting the state's use of the evidence, and instructing the jury on how it may consider the evidence."

*Martinez*, 335 Or App at 654-55. However, despite the cabining of the general prohibition on admission of evidence that "primarily or substantially derive[s] its relevance from character-based propensity reasoning" in *Davis*, *Martinez* also recognized the longstanding treatment of child sexual abuse cases as outliers that was established in *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), particularly with regard to step three. *Id.*; *see Davis*, 372 Or at 642 (holding that "because the primary or substantial value of the [other acts evidence] was not derived from character, or character-based propensity reasoning, declining to exclude the evidence under OEC 403 was within the permissible range of the trial court's discretion"). "[P]ropensity evidence may be admissible in child sexual abuse cases after OEC 403 balancing when it has cognizable probative value to an

issue other than the defendant's character and propensity." *Martinez*, 335 Or App at 660; *see Williams*, 357 Or at 17 (noting the possibility that other acts evidence to prove propensity could be precluded by due process in cases where a defendant is charged with crimes other than sexual abuse). The "issue other than the defendant's character and propensity" for which propensity evidence may be admitted in a first-degree sexual abuse case arises from the elements of the offense: the state must prove that the defendant acted "for the purpose of arousing or gratifying the sexual desire of a person." *See* ORS 163.427(1)(a) (first-degree sexual abuse requires proof that the defendant subjected the victim, a person under the age of 14, to "sexual contact"); ORS 163.305(5) (defining "sexual contact" as "any touching of the sexual or other intimate parts *** for the purpose of arousing or gratifying the sexual desire of either party").

In cases in which the state must prove that the defendant acted for a sexual purpose, Oregon case law has allowed evidence of a defendant's prior acts or interactions with children, when it is offered to establish that the defendant has a sexual interest in children, because it is relevant and probative to the issue of whether the defendant committed the act for a sexual purpose. *See, e.g.*, *Williams*, 357 Or at 23 ("[T]he state was required to prove that defendant had acted with a sexual desire that was aroused or gratified by contact with children. Because most adults do not have such a desire, the state was entitled to prove that defendant is an adult who does. The fact that defendant has a sexual interest in children would not, alone, establish that defendant acted on that interest in the charged circumstances, but it is a fact that is logically relevant to that issue. If the jury inferred from the [] evidence that defendant had a sexual interest in children generally, then the jury could take defendant's interest into consideration ***.").

We understand *Davis* and *Martinez*, read in conjunction with *Williams*, to permit evidence of a defendant's prior acts or interactions with children when offered to show that the defendant's alleged act in a child sexual abuse case, if true, was committed for a sexual purpose, subject to OEC 403 balancing. *See id.* ("If the jury inferred from the [] evidence

that defendant had a sexual interest in children generally, then the jury could take defendant's interest into consideration ***."). However, such evidence cannot be used to prove that, because the defendant has a sexual interest in children, the defendant committed the charged act. *See id.* ("[T]here is a slim but distinct difference between using the [evidence] to establish defendant's character and propensity to act accordingly, and offering that evidence to establish defendant's sexual purpose. *** [D]efendant's sexual purpose is an element of the charged crimes. The state did not offer the evidence to establish that defendant committed the charged acts; it offered the evidence to prove an element of the charged crimes—defendant's sexual purpose."); *Martinez*, 335 Or App at 655 n 8 ("We understand that theory of relevancy, in which other-acts evidence is offered to prove that the defendant *committed the act* charged in the offense, to be an impermissible propensity purpose." (Emphasis in original.)).

With that background, we proceed to provide the facts pertinent to defendant's first assignment of error and to apply the *Davis* and *Martinez* framework, read in conjunction with *Williams*, to determine the purpose for which the evidence was admitted and whether the trial court abused its discretion in admitting the evidence under OEC 403.

2. *Facts*

At the pretrial hearing on the state's motion, the following evidence was presented. *See State v. Taylor*, 326 Or App 396, 398, 532 P3d 502 (2023), *aff'd*, 372 Or 536, 551 P3d 924 (2024) (because "the challenged evidence was deemed relevant and admissible *** during a pretrial hearing, [our] review is limited to the record that was before the trial court at that time").

Under OEC 404(4), the state sought to introduce, among other evidence, testimony from MT's cousin, TV, that, when staying at MT's house, defendant would frequently open the closed bedroom door and enter the bedroom when he knew that MT and the other girls were undressed or showering. The state argued that the evidence was relevant to the issue of whether he has an interest in children. In its

motion *in limine* to admit the other acts evidence, the state explained TV's expected testimony:

> "[TV] said [MT] had a bathroom attached to her room. She said she would shower in [MT's] bathroom and then change in the bedroom. While the girls were changing, the defendant would come into the room and make up a reason why he was there. She said he always seemed to find a reason to come into the room while the girls showered or changed. She said it made her very uncomfortable and that he could have easily talked to them through the closed door. She said she was 15-16 years old at the time. She said this happened multiple times."[3]

The state explained that, because defendant was charged with 10 counts of first-degree sexual abuse, "[o]ne of the material elements that the state has to prove *** is that [defendant] committed these crimes—touching with a sexual purpose. And manifestly relevant to that issue is his interest in young minor females." Further, the state said that it was offering the evidence under a propensity theory:

> "I don't think that there is any question that the evidence of this nature is propensity evidence. But the case law that has followed regarding other-acts evidence has been very clear.

> "The purpose for introducing this kind of evidence is very narrow and that is what's addressed primarily in the *Williams* case, which I think is directly on point for what we're discussing here.

> "[The] first point of the analysis is whether each of these types of evidence is logically relevant to [defendant's] sexual interest in young minor females[.]

_____

[3] At trial, TV ultimately testified that there was a particular incident in which defendant entered the bedroom while she had been showering and the other girls were changing, and it made her uncomfortable because "he was just standing there. And we were told to, you know, change and get ready for bed, so why is he just standing there?" TV first testified that she only recalled that one incident but then stated that she remembered telling a detective that it had happened multiple times. Because we consider the evidence before the trial court at the time it made its ruling, *Taylor*, 326 Or App at 398, we proceed under the impression that the conduct was repeated, *i.e.*, as the state described what it expected TV's testimony to be.

Additionally, it is unclear from the record whether MT was in the room during the alleged instances of defendant entering and remaining in the bedroom while other girls were changing clothes or showering. Thus, we proceed under the impression that MT was not in the room.

"*****

"[C]onduct including him *** coming into the children's room when they are getting dressed or coming out of the shower when those conversations can happen from outside of the door is absolutely relevant to his interest in young children and, by that nature, follows logically."

When the court questioned how the witnesses knew that defendant knew that they would be undressed when he opened the bedroom door and then entered the room, the state explained that "[t]his is something that happens periodically *** it's not, 'I opened the door and was like, oh, I'm sorry, you're changing. Let me leave.' There is lingering and repeated conduct," and that "[defendant] is inserting himself into the situation that he knows is happening. And I think that the fact that he's putting himself there while these girls are getting out of the shower and *** changing their clothes is relevant."

Defendant responded that any sexual intention prescribed to defendant's act of opening the bedroom door and entering the room was "pure speculation," the evidence was purely propensity evidence, and that it would inflame and mislead the jury. The state assured the court that it would not argue that, because he engaged in this behavior previously, he must be guilty of the crimes alleged by MT, and that it believed that a limiting instruction would cure any potential danger of unfair prejudice. The state also asked for a limiting instruction "because the jury should know when they are considering this evidence that they are not to consider it for propensity evidence. *** That just because this happened on these previous occasions that the state has presented in evidence, that [defendant] must be guilty of these crimes. That is not the purpose of that evidence."

The trial court allowed the evidence regarding defendant opening the closed bedroom door and then entering the bedroom when the girls were showering or changing, but the trial court excluded the other evidence presented by the state. It explained that:

"This other bad acts stuff is complex. So I'm going to do my best here, but it's a little bit of a mixed bag. ***

"And where I'm not allowing something, it's either because I don't find any probative value to it other than just propensity, or I find that any probative value is outweighed by danger of substantial prejudice.

"*****

"I am allowing evidence that [defendant] would come into the bedroom when the girls were showering or changing. I do not find that the danger of prejudice outweighs the probative value of that on the issue of sexual interest in young girls."

### 3. *Application*

We now apply the framework articulated in *Martinez* to this case. First, given the "other acts" at issue here—defendant opening the closed bedroom door, entering, and then remaining in the girls' bedroom while they were showering or undressed—we do not think it is possible to parse those acts into constituent parts in any meaningful way, nor do the parties assert that it is possible to do so. *See Martinez*, 335 Or App at 654 ("[T]he court should parse the other 'acts' into constituent parts, where possible[.]"); *cf. Davis*, 372 Or at 637 (parsing evidence that defendant left sexually explicit notes on women's cars into two parts: the contents of the notes and the placement of the notes); *Martinez*, 335 Or App at 657 (parsing evidence that defendant sexually abused another child into two parts: the abusive conduct itself and the context of the abuse). Therefore, we consider the proffered other acts evidence as a whole.

Second, we consider the probative value of the evidence to "determine whether its relevance relies on character reasoning expressly or by implication." *Martinez*, 335 Or App at 654. "Probative value is essentially a measure of the persuasiveness that attaches to a piece of evidence." *Davis*, 372 Or at 634 (internal quotation marks omitted). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. Defendant was charged with first-degree sexual abuse—an offense that requires a specific sexual intent. According to the state, the fact that defendant intentionally viewed the girls while undressed is

probative of his sexual interest in young females. That evidence makes it more probable that defendant had a sexual interest in MT at the time of the charged offense and, therefore, that his alleged actions, if proven, were committed for a sexual purpose. That theory of relevance "explicitly, and necessarily, rel[ies] on an intermediate character inference, *i.e.*, that a defendant has a sexual interest in children generally," and it "employ[s] propensity reasoning, *i.e.*, that the defendant's sexual predisposition makes it more likely that they acted with a sexual purpose in the charged offense." *Martinez*, 335 Or App at 656 n 9.

Third, "the court, in its discretion, may admit evidence that does not primarily or substantially derive its relevance from character-based propensity reasoning." *Id.* at 654-55. At this step, it seems "inescapable to conclude" that the trial court abused its discretion when it admitted the evidence in this case, because its relevance necessarily relies on propensity reasoning. *See id.* at 659 ("It may therefore seem inescapable to conclude, under the [*Davis*] framework, that even the highly probative prior abusive conduct evidence 'primarily or substantially' derives its relevance from defendant's character and, therefore, that the trial court abused its discretion in declining to exclude the evidence under OEC 403."). However, as discussed above, because this is a child sexual abuse case, although defendant's sexual interest in young females relies upon propensity *reasoning*, it is not necessarily impermissible. *See id.* ("But the application of [*Davis*] is not that straightforward in this [child sexual abuse] case[.]"). Although offering such evidence relies primarily upon propensity reasoning, under *Davis*, *Williams*, and *Martinez*, it may be permissible and admissible if it goes to the sexual purpose element of the offense. *Id.* at 660 ("[A]lthough a jury * * * would perceive the evidence as relying on character as its source of relevance * * *, [*Davis*] nonetheless suggests that it falls somewhere in the middle of the OEC 403 balancing spectrum by virtue of it having cognizable probative value as to whether defendant acted with a sexual purpose and therefore subjected [the victim] to sexual contact, an element of the charged offense."). The issues in this case, then, are the extent to which the evidence was offered to establish that defendant's actions, if they indeed

occurred, were done for a sexual purpose (versus merely to establish that defendant is a bad person and thus was more likely to engage in the charged conduct) and whether the trial court abused its discretion in balancing the probative value of the evidence against the risk of unfair prejudice under OEC 403.

Although the state's evidence—that defendant had previously intentionally viewed the girls while they undressed—relies upon propensity reasoning, it is logically relevant to the issue of whether he has a sexual interest in young females. *See Williams*, 357 Or at 22-23 (evidence that defendant possessed children's underwear was "logically relevant as long as it had a tendency to increase the probability that defendant committed the alleged touching to arouse or gratify a sexual desire" and "meets the minimal requirements of OEC 401"); *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999) (OEC 401 "establishes a very low threshold for the admission of evidence" (internal quotation marks omitted)). That inference of sexual interest in young females makes it more probable that, *if* defendant did engage in the massages in the bedroom as alleged by MT, he did so for a sexual purpose. The trial court admitted the evidence on that basis. Further, the state requested a limiting instruction to ensure that the jury did not consider the evidence for an improper purpose: "They are not to consider *** just because this happened on these previous occasions *** [defendant] must be guilty of these crimes."

However, even if the evidence was offered and admitted for the permissible purpose of establishing defendant's sexual interest in young females, as relevant to the sexual purpose element of the offense, the trial court must still have properly balanced the probative value of the evidence against its prejudicial effect. Because the state offered the evidence as "propensity evidence that necessarily relied on the intermediate inference" that defendant has a sexual interest in young females, "the *risk* of unfair prejudice that inheres in character-based propensity reasoning was necessarily present here." *Martinez*, 335 Or App at 659 (emphasis in original). But the evidence in this case is different than evidence in other cases regarding other acts evidence to show

sexual interest in children. *See, e.g.*, *id.* at 645 (court erred in admitting evidence that the defendant began sexually abusing a child at age 11, resulting in the child's pregnancy at age 15); *State v. Terry*, 309 Or App 459, 465, 482 P3d 105 (2021) (court did not abuse discretion in admitting evidence of prior conviction for attempted unlawful sexual penetration of 10-year-old relative and the defendant's statement that he "would have a hard time turning down a 10, 11, 12, or 13-year-old," but it did err in admitting evidence of the defendant's statement that he touched his infant daughter's vagina); *cf. Williams*, 357 Or at 23 (children's underwear found in the defendant's possession on one occasion was relevant and admissible to show sexual purpose).

Evidence that defendant entered the girls' room while they were undressed is less probative than evidence that a defendant has prior convictions for similar offenses, but it also carries less risk of unfair prejudice. The evidence the state sought to admit in this case seems less likely to inflame jurors or cause the jurors to convict defendant of the charged conduct based upon the proffered evidence of his prior acts than evidence we have concluded a trial court did not abuse its discretion in admitting in other cases. *See, e.g.*, *Terry*, 309 Or App at 465 (admission of evidence of prior conviction for attempted unlawful sexual penetration of minor relative not an abuse of discretion); *see also Old Chief v. United States*, 519 US 172, 180, 117 S Ct 644, 136 L Ed 2d 574 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."); *Davis*, 372 Or at 634 ("Evidence is unfairly prejudicial if it improperly appeals to the preferences of the trier of fact for reasons that are unrelated to the power of the evidence to establish a material fact. *** In the context of OEC 403, 'unfair prejudice' means 'an undue tendency to suggest decisions on an improper basis, commonly although not always an emotional one.'" (Internal quotation marks and citations omitted.)). Because the trial court's determination that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice "was one—among multiple—legally permissible outcomes," we cannot say

that the trial court abused its discretion under OEC 403 in admitting the evidence. *Davis*, 372 Or at 641.

Finally, we consider what steps the trial court took to mitigate any unfair prejudice. At trial, once the court ruled that it would admit the evidence for the limited purpose of establishing defendant's sexual interest in young females, the state requested, and the court agreed, to provide a limiting instruction. Defendant objected, explaining, "I just don't see the need for the [limiting instruction.] * * * I just think that the limiting instruction just amplifies that testimony. * * * I can address it in—in my closing, if necessary." After defendant objected, the trial court did not provide a limiting instruction. Accordingly, although the court's failure to provide a limiting instruction might indicate an abuse of discretion under other circumstances, given that defendant objected to the trial court providing one in this case, we do not think this factor weighs against the trial court's decision to admit the other acts evidence.

In sum, although the evidence's relevance depended upon propensity reasoning, in this child sexual abuse case, the state offered, and the trial court admitted, the evidence to establish defendant's general sexual interest in young females as it relates to the sexual purpose element of the crime. Further, the trial court did not err in its OEC 403 balancing. Therefore, the trial court did not abuse its discretion in admitting the other acts evidence.[4]

B.  *Impeachment Testimony*

In his second assignment of error, defendant argues that the trial court erred by excluding impeachment testimony from a church elder, David Gomez, because his "testimony was relevant to demonstrate AT's possible bias" against defendant.[5] Whether evidence is relevant is a question of law. *Titus*, 328 Or at 481.

---

[4] As our discussion in this opinion indicates, our analysis in this case is limited to the admissibility of propensity evidence in child sexual abuse cases. We express no opinion on the admission of such evidence in other types of cases.

[5] The state argues that defendant failed to preserve his argument, but the trial court was aware that defendant offered Gomez's testimony for impeachment of AT based upon bias or interest from earlier in the trial when defendant offered an exhibit of an interview of Gomez by the defense investigator.

"It is always permissible to show the interest or bias of an adverse witness," *State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984) (internal citations omitted), including a "witness's motive to fabricate testimony or allegations against a criminal defendant," *State v. Hassan*, 315 Or App 324, 332, 501 P3d 1096 (2021). Evidence offered to impeach a witness for bias or interest "need only have a mere tendency to show the bias or interest of the witness." *State v. Valle*, 255 Or App 805, 814, 298 P3d 1237 (2013).

Under OEC 609-1(1),[6] "a party is entitled to make an initial showing of bias that presents sufficient facts from which the factfinder may infer bias," and a court legally errs by attempting to curtail that inquiry before the initial evidentiary threshold is met. *State v. Muldrew*, 229 Or App 219, 227, 210 P3d 936 (2009). Likewise, under OEC 403, a court has the discretion to exclude evidence of bias only "after an initial showing of bias *** has been made[.]" *Id.* "[T]he court's discretion to limit impeachment evidence that goes to *** bias applies only to evidence that amplifies, develops, or elaborates an initial showing." *State v. Shelly*, 212 Or App 65, 69, 157 P3d 234 (2007) (internal quotation marks omitted). Extrinsic evidence of bias is inadmissible if the facts that might show bias have already been fully admitted. *Hubbard*, 297 Or at 798 n 4.

At the evidentiary hearing, Gomez testified that he had spoken to AT about her desire for a divorce three or four times. The bulk of his testimony explained his role as a church elder, but he also testified that he had explained the church's policies and stance on divorce to AT. He explained that a church member did not need church permission to

---

[6] OEC 609-1 provides, in part:

"(1 The credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the statement shall be shown or disclosed to the opposing party.

"(2) If a witness fully admits the facts claimed to show the bias or interest of the witness, additional evidence of that bias or interest shall not be admitted. If the witness denies or does not fully admit the facts claimed to show bias or interest, the party attacking the credibility of the witness may then offer evidence to prove those facts."

divorce. However, unless the divorce is based on "immorality," such as adultery or sexual abuse, if the person remarries, in the church's view, they are committing adultery against the original spouse. They would then have to repent or be disfellowshipped. To establish immorality, the accused would have to confess to the conduct, or two witnesses would have to verify that the conduct occurred.

The state argued that the evidence was not relevant and was not proper impeachment because other witnesses had already testified about the church and divorce. Despite objections by defendant, the court excluded the testimony as irrelevant collateral information. It explained that the testimony did not accomplish anything "besides giving us a whole lot of information about elder's roles and what they do. Which—any of which, quite frankly, without more is collateral \*\*\* information." Defense counsel asked for a brief recess to "see if there's a legal basis for my argument." The court responded:

> "It—well, from what I have seen in terms of the impeachment issue, what I've been looking at in the rules, and the commentary on 608(2), 'Does not bar impeachment of a witness's direct testimony by contradictory evidence of a non-collateral matter.'
>
> "\*\*\*\*\*
>
> "But otherwise it has to be a collateral matter. And, I mean, the fact that you've still got [AT] under subpoena—you can call her back and examine her, but I don't know that I—based on the testimony of the elder, I'm not there." [7]

The parties and the court agreed to return for further arguments and a final ruling, but any follow up discussion on the topic is not in the record.

---

[7] It seems that the court misspoke and meant to reference OEC 609-1(2). The commentary to OEC 609-1(2) states:

"Some jurisdictions take the position that if a witness fully admits facts claimed to show bias or interest, the impeaching questioner cannot repeat the attack by calling other witnesses to the same facts. If the witness denies or does not fully admit the facts claimed to show bias or interest, on the other hand, the attacking party may prove those facts by extrinsic evidence. This is the rule in Oregon. *State v. Hing*, 77 Or 462, 151 P 706 (1915). It is retained to prevent needless delay and the injection of collateral issues."

We conclude that Gomez's testimony did not provide relevant facts that had not already been admitted to show AT's potential bias or interest against defendant. AT's desire to divorce defendant—the basis for her alleged bias—had already been established through her testimony. Thus, there were sufficient facts presented to the jury to infer bias. AT further testified that she had spoken to Gomez about the church's views on divorce. Gomez's testimony about the role of a church elder, the church's views on divorce, and that he had spoken to AT about those views was, therefore, collateral extrinsic evidence that the trial court could, within its discretion, exclude.

## C. *Vouching*

Finally, in combined argument of his third and fourth assignments of error, defendant argues that the trial court erred when it "sustained the prosecutor's vouching objection to [expert witness Daniel Reisberg's] testimony" and when it "instructed the jury to disregard Reisberg's testimony regarding [the victim's] memory." Whether testimony constitutes impermissible "vouching" presents a question of law. *State v. Sperou*, 365 Or 121, 128, 442 P3d 581 (2019).

The vouching rule "prohibits a witness from making a direct comment, or one that is tantamount to a direct comment, on another witness's credibility," and it ensures that the jury's credibility determination is not influenced by another witness's opinion. *State v. Black*, 364 Or 579, 585, 437 P3d 1121 (2019). That concern is heightened with scientific testimony, because "scientific evidence or evidence perceived by lay jurors to be scientific in nature possesses an unusually high degree of persuasive power." *Id.* at 596 (discussing vouching). Vouching testimony is categorically inadmissible. *Id.* at 587.

Defendant called Dr. Daniel Reisberg, a research psychologist, as a memory expert. Reisberg testified generally that the passage of time and the person's level of emotion can influence the strength or weakness of a person's memory and that studies have shown that people remember traumatic events rather than blocking them out. Early in his testimony, in response to a vouching objection by the

state, the trial court cautioned Reisberg that "he is not to opine as to the credibility of any individual in this case, or any evidence in this case." Defense counsel asked Reisberg, "[I]n regards to [MT] in this case, what things could we look at to see what potentially could influence her recollection of events?" Reisberg responded:

> "Okay. Let me start by making it clear that I'm mindful of the Judge's instruction. And so I'm certainly going to offer no view at all about, you know, whether her memory is reliable or not. And you know, if I could be clear on that, the science is all about probabilities.

> "And so what the science will allow us to do for any particular situation, is start specifying what the risk of error is. But the science is just never going to tell you whether the risk of error, in a particular case, actually produced an error.

> "The science is silent on that issue. I can talk about risk but whether the risk produced an error is something for which I, as a scientist, can offer no view. And if I may say so, I mean, I think that's the jury's decision, not mine.

> "And so if I could just, you know, put this into blunt terms, I think the limits of the science guarantee that I'm going to follow the Judge's instruction because the science would not allow me to opine about whether her memory is accurate or not.

> "But having said that, I mean, what we have here is I think, just, you know, clearly in the evidence, a memory coming from eight or nine years back. And a memory that comes from an event that has been clearly described as something that made her uncomfortable at the time.

> "And you know, that does not, I think, you know, involve any words suggesting extreme emotion. That's the kind of memory that is very likely, not certain, but very likely to fade over the years. And eight or nine years is, for a memory like that, a long passage.

> "And so aft—for that kind of event, and for an eight or nine year delay, that would plausibly leave [MT] with a memory, after all that time, that's not particularly clear, not particularly crisp. Others will have to decide whether her memory fits with those descriptions."

The state objected to the testimony as vouching. The court sustained the objection and instructed the jury to "disregard the particular testimony relating to [MT's] memory itself."

The trial court did not err in sustaining the state's objection to the testimony as vouching and instructing the jury to "disregard the particular testimony relating to [MT's] memory itself." Although Reisberg stated in his testimony that he was not commenting on MT's credibility, he had already testified about how the intensity of emotion about an event and the passage of time can influence memories. Reisberg then commented that, because MT stated that the events made her "uncomfortable," "[t]hat's the kind of memory that is very likely, not certain, but very likely to fade over the years." He further commented that the delay in her disclosure "would plausibly leave [MT's] memory *** not particularly clear, not particularly crisp." The trial court did not exclude Reisberg's testimony about how the intensity of emotion and length of time can influence a person's memory—factors for the jury to consider in evaluating the victim's credibility. It only struck the testimony in which Reisberg directly applied those factors to the specific victim in this case. Accordingly, the trial court did not err in instructing the jury to disregard Reisberg's testimony relating to MT's memory specifically as vouching.

## III.   CONCLUSION

In sum, the trial court did not err in admitting under OEC 404(4) the other acts evidence that defendant entered the girls' bedroom while they were undressed for the purpose of establishing his sexual interest in young females, the trial court did not err excluding Gomez's testimony as irrelevant collateral information, and the trial court did not err striking Reisberg's testimony as vouching.

Affirmed.